Cite as 2025 Ark. 12

# SUPREME COURT OF ARKANSAS

No. CV-22-515

ARKANSAS BLUE CROSS AND
BLUE SHIELD

APPELLANT

V.

FREEWAY SURGERY CENTER ET
AL.

APPELLEES

Opinion Delivered: February 27, 2025

<u>CONCURRING OPINION ON
DENIAL OF PETITION FOR
REVIEW</u>.

**NICHOLAS J. BRONNI, Associate Justice**

I agree with the decision to deny the petition for review here because—as the court of appeals ultimately held—Section 115 doesn't apply to network agreements. That's clear from the statutory text, and it's not a close call. But I write separately to note that my concurrence doesn't represent an endorsement of the lower court's method of statutory interpretation or language in this Court's case law that would seem to endorse it.

In short, Section 115's language and overall structure underscores that provision governs "polic[ies], contract[s], plan[s], or agreement[s]" between "the person entitled to payment or reimbursement"—*that is*, the insured—and the insurer. Ark. Code Ann. § 23-79-115(a)(1). It says nothing about contracts or agreements between providers and insurers. So that provision doesn't apply here, and that should have been the end of the analysis.

Yet the court of appeals' analysis didn't stop there. Instead, taking its cue from this Court's repeated—but erroneous—assertion that the first principle of statutory

interpretation is to divine legislative intent, the court of appeals turned to legislative history. The court of appeals then held that because network agreements weren't permitted in 1977, a network agreement isn't an agreement as that term is used in Section 115. And as such, the court of appeals held, they aren't covered by the statute. To be sure, what a word means at the time of enactment is important. *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284, (2018) ("[I]t's a fundamental canon of statutory construction that words generally should be "interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute.") (internal quotation marks omitted). But in focusing on the legal environment in 1977, the court of appeals ignored the General Assembly's subsequent decision to permit network agreements and did not consider whether those now permissible agreements are agreements. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 89–90 (2012) (explaining that while the definition of a word in a statute is fixed, subsequent laws may alter the things or people that fall into that fixed definition).

That approach was mistaken, and the following example illustrates why. Suppose a statute provides that "an agricultural inspector shall inspect strawberries, bananas, pineapples, and all other fruits in grocery stores for insects." At the time of the statute's passage, grocery stores aren't permitted to sell dragon fruits. Analyzing the statute ten years later when dragon fruits have now become legal, it would be erroneous for a court to say that inspectors need not search dragon fruits for insects because their sale wasn't permissible at the time of enactment. The hypothetical statute clearly covers all other "fruits." Indeed, to put it simply, fruit remains fruit—whether it was illegal when the statute was passed or not.

The same is true here. Network agreements are still agreements whether the year is 1977 or 2025. Therefore, the court of appeals' reliance on their impermissibility in 1977 is irrelevant. Instead, it should have focused on whether network agreements fall into the types of agreements covered by Section 115's text. Because the court of appeals didn't do that analysis, I cannot endorse its method of statutory interpretation.

WOMACK, J., joins.